Your Honor, it's the fourth case of the morning, call 2090366, People of the State of Illinois v. John Barnes. On behalf of the Appellant, Mr. Marvin Levitt and Mr. Andrew Schultz, and on behalf of the People, Mrs. Melinda DePlante. Both sides ready to proceed? Yes, Your Honor. Then you may proceed when you're ready. Thank you. Your Honors, Counsel, if it pleases the Court, I will concentrate my argument on Issues 1 and 3. Issue 2 is a reasonable doubt argument, which is fact-driven, and in our brief we largely set forth why certain testimony is improbable and unlikely to be true. I understand, Your Honors, we'll read the briefs and without belaboring the facts. On October 28, 2005, the defendant, Casey Barnes, called the Rockford Police. Casey was calling the police because his warden, Nathan, was wrongfully removing property from the house. Nathan was living in Casey's home with his mother and brothers. He was 17 years old. At the time, he had been living with Casey, the defendant, since he was 10. Roseanne Baker of the Rockford Police Department was one of the officers to arrive on the scene. She was the state's first witness. She would testify that Nathan told her that Casey was sexually abusing him, that he couldn't take it anymore, and that he wasn't gay. When asked by Officer Baker if there was anything in the home that might help prove the allegations, Nathan directed Officer Baker to a nightstand in a bedroom where evidence that has been described as anal beads was collected. Casey was charged with five counts of criminal sexual assault, all Class I felonies, carrying sentences of four to 15 years. The jury found Casey guilty of all five counts. The judge sentenced him to a total of 38 years in the Illinois Department of Corrections. He was sentenced to seven years on each of Counts 1, 2, 4, and 5, and 10 years on Count 3. Our third issue concerns itself with Count 3. In the third issue that Casey raises in this appeal, we allege that the trial court based the 10-year sentence on improper factors. The trial court stated, and it's in the, we cite it in a brief, the exact language at page 47. The court, okay, the reason for the additional time, and that is instead of giving seven years on each of the five counts, she gives 10 years on this Count 3. The reason for the additional time on Count 3, the anal beads count, I believe it was, and because of the additional, in that case, there was a foreign object placed in the victim's body. And that, of course, is fraught with additional peril to the health and well-being of an individual. And so that's the reason the court did give some additional time on the Count 3. I have a question about that. What if the court had remained silent and said nothing and just gave the 38 years and imposed a 10-year sentence? I think my argument becomes more difficult. Would be. And let me also ask you this. Is there something inherently wrong with the court's analysis that sticking beads up the anus of a child is not dangerous? What if a bead breaks off? I mean, isn't that a fair? And that's where I would go in the argument. The fact is there's really a double enhancement that's going to be involved here. An object is an element that is necessary to be part of the offense. So then the issue is, is this foreign object, one, which the court then says is a factor for raising what she says the sentence is, inherently more dangerous? And if the record provided us, Justice Burkett, with something that suggested that being beads were large, the case law in this district and in the state of Illinois is that if an improper factor is used, meaning if there is something that you can't determine from the record, would suggest that the factor is present. And in this case, a bald allegation that somehow this toy or item or this sexual object is somehow different without something in the record. Which brings me to my next question. There was no post-trial motion challenging the sentence on this ground, correct? I'm in trouble on a lot of these issues. You could have raised that issue and there could have been. Well, a trial counsel could have. That issue could have been raised and the state could then have called a witness, correct? Ms. McClain is going to kill me on a lot of the forfeiture and waiver arguments that are available to the state in this case. But as the court knows, forfeiture and waiver are admonitions of the parties and they are not limitations on the jurisdiction of this court. And that's all I can say as I stand before you. And I can also argue that plain error and fundamental fairness, and we give you cases in our brief, justify looking at this issue. And I think you're right again, Justice Burkett, if the court had said the beads are large, these look like they could break, there is something sharp. Your Honor, arguably a body part is more dangerous than the object. You need to give something. And again, there is case law that says if you can't determine, then you can't justify. And that's on the appellate court in terms of its own rules. I think that I pretty much covered the third issue. But essentially the court enhanced the sentence from seven years she had given on each other count because she stated a foreign object was used. And because the placement of the foreign object in the victim's body is fraught with additional peril. Why so? What's in the record to say that? And again, when somebody gets 38 years and you're asking for a small reduction, it is important to that person that I appear for that I make this argument, I think, on appeal. Again, it must be noted. The beads were not part of the evidence. Pardon? Were the beads part of the evidence? They were. And the court could have noted that the beads were large or that the beards somehow were a different type of object than any other object that ought to be considered for purposes of enhancing or otherwise dealing with that sentence. And the court didn't. And so, again, we are left to wonder. And the beads actually came into evidence. So the use of the beads, because they're an element and a basis, cannot be used to enhance. And I think, again, the second factor that somehow the use of the beads creates an additional peril. There's nothing in the record. And so, again, the case law, a reviewing court, unless the reviewing court can determine from the record that the weight placed on the improperly considered aggravating factor was so insignificant that it did not lead to a greater sentence, this court is, I think, compelled to look at the issue in that light. And, by the way, I don't know that the state makes a concession here or a full concession. The state notes in its own brief at page 32, and I quote, as the court in this case stated, that the anal beads were the reason it gave the longer sentence. The state is hard-pressed to make the argument that the sentence was not affected by the allegedly, our allegation, improper factor. So I think you look at that issue. And if I may then proceed to issue, back to issue one. And, again, the state correctly notes the first time this issue of the child sexual abuse accommodation syndrome is raised was in a post-trial motion. I don't know why trial counsel didn't raise it earlier as he was raising it when he did raise it. I think forfeiture and waiver are valid arguments by the state. And I'm very familiar with the case of People v. Hodor, which is the second district's own ruling accepting this syndrome. And I'm familiar with all of the other cases that deal with this particular syndrome. But we come here and we urge you to review this as whether or not it should be something that should come into evidence. And as we review this issue for purposes of arguing this appeal, you know, it all starts with a Dr. Roland Summitt, who wrote a paper in 1982 or 83 that suggests that there were five factors to such a syndrome. And in this case, a Mrs. McDermott or Ms. McDermott is permitted to testify as to what those factors were. And the state itself, well, I'll get to the state in a moment, but she testified right after the policeman testified. And then she testified there is the syndrome. I never met Nathan. I'm not familiar with the facts of the case. But here's the syndrome. And then Nathan's going to testify. Now, the problem with this syndrome is, with all due respect to Dr. Summitt, this isn't the kind of expert testimony we should allow in this state. And if you go back to the first case that kind of dealt with this after Dr. Summitt's paper on the issue, it was case Nelson. And Nelson was a Fifth District case. And in Nelson, the trial judge himself, by the way, later made statements that maybe I shouldn't have lawed it in. And when the Fifth District in Nelson said, we're going to accept this based on, and we all know the statute, 725 ILCS 5 slash 115 dash 7.2 in a prosecution for an illegal sexual act perpetrated upon a victim, including but not limited to prosecutions for violations of sections 1213 through 1216 of the Criminal Code of 1961, testimony by an expert relating to any recognized and accepted form of post-traumatic stress syndrome shall be admissible as evidence. So it seems like there's justification in statute for admitting this. But the problem with this syndrome is Dr. Summitt's paper was not a scientific paper based on scientific data. It was a clinical experience. And it was based on dialogue that he had with patients. And it wasn't, I think Dr. Summitt himself would be surprised at the forensic credibility, the forensic use we're trying to make of this, not only here in the Nelson case. They recite it. New York accepts it. California accepts it. A number of other states accept it. But a number of states don't. And the number of states that don't are very specific. Iowa particularly in a case called State v. Shrively. They're saying this is not science. This is not relevant. And essentially it is unfair to a defendant that this kind of case be viewed in the context of these five factors. Why? Because when you take a look at the five factors themselves, secrecy, helplessness, entrapment, conflicted or delayed exposure, recantation, and then you learn that not all the factors need apply, a defendant doesn't have a chance when he testifies it didn't happen because on each of those factors the child kept it secret or didn't. Well, it counts or doesn't count. But if he kept it secret, it's viewed to the context of it having happened. And if he said it happened, then it's viewed to the context of, well, he didn't keep it secret. But in either case, the defendant is viewed as a child abuser, one justifying why he didn't tell and the other, well, he told it's okay, not one of the characteristics or factors of the syndrome. And you can do that with each one. He recanted or he didn't. He was afraid or he wasn't. He accommodated or he didn't. And in each case what you do is you justify for the prior fact why a witness alleging child abuse acted in a particular way. But the defendant has no chance. This is not appropriate expert testimony. And this syndrome, and by the way, the DSM does not recognize it as a, first of all, it's interesting also when you look at the DSM-IV, they don't call it a syndrome. Post-trauma stress is a disorder, not a syndrome. We use language very loosely, and I don't think we should when we talk about a person's liberty as we're talking about here. Is it a recognized syndrome? Of course it is because other states recognize it. But is it a recognized syndrome within the context of scientific community? Wouldn't a witness make that all clear to the fact finder? Well, okay. Those are factors. And the state argued that. And they said you had your right of cross-examination, and so you made it a point that not only did she attend 70 seminars, not one was on that, even on that syndrome. Okay? But what did the state argue on the motion for new trial when this was first being raised? They said, yeah, but all we did was offer this for the context in which we were to view Nathan's testimony. Well, that's exactly the objection. That's exactly the objection, that that's what you did. You gave context for what might otherwise be unbelievable to be believable because of a syndrome which, for purposes of, again, with all due respect to Mr. Summitt, it may be fair in terms of the scientific community for the limited purpose for which it was published, but I don't think he would say this is a test. In fact, we give you some of what he himself says. This isn't a test that should be used in this way to gauge credibility of sexual abuse by those that are going to be testifying. So here I am standing before Your Honors making, I think, maybe one of the hardest arguments that you can make. The Supreme Court has not dealt with the issue, although it is in a Supreme Court case. It was not dealt with as a challenge. It was remarked upon that it was in a case that the Supreme Court heard. But if you take a look at the Nelson case, it was initially limited to rebuttal testimony. Then the Dempsey case in the 5th District, which followed, it was limited to cross-examination when the victim is attacked, credibility is attacked. Well, that's always going to happen, so that limitation having been taken off rebuttal, well, now all of a sudden you can use it. And I think what happened here, and then when you get to the other cases, which your Hodor case from the 2nd District is going to recite, you had this snowball effect. You had this Nelson case that started it, and Nelson was really basing it on other jurisdictions. It didn't go into scientific validity. What it did was it said, all right, these others recognize it, so we're going to recognize it. We think it's probably good, but no questioning of the validity. And then there was this snowball effect where every case cites Nelson, Dempsey, Hodor, Watson. And I can't come before Your Honors, Steve, and say that the districts are in conflict because they are not. But that doesn't mean that as I stand here and I make this argument, we are not right in our view that the forensics of this being used in child abuse cases is inappropriate. And that's the argument I'm making here today, and I know the forfeiture and I know the waiver argument. Can I ask this question? Sure. On page 46 of your brief, why did you go after this issue about the Department of Children and Family Services? What does that add? What does that add? I mean, there's no report to DCFS. What does that mean? Does that mean there's no abuse? No. Okay. What we're suggesting in the totality of there was a period of seven years, excuse me, when Nathan was living with Casey. And keeping in mind, too, that I'm not going to go into all of the quality of the evidence that was offered,  and in some odd way, again, during the motion for new trial, the State says we're not calling the brother the other brother. And we want the appellate court to know this, that the other brother told us there was sexual abuse with him, but he's recanted. So we didn't call. Now, that's in the record, so I didn't go. But in the context of the totality of what occurred here, he's lived with him for seven years. From 13 to 17, he alleges abuse. There's only one date. Now, again, this is a 17-year-old boy who was exceptional in school, who was on the football team. There's only one date that he can allege for any sex act having occurred, one date. And it's alleged that it happened a hundred of times. And, by the way, all these sentences are consecutive. I guess they could have charged it a hundred of times, you know, but that's another issue. But the fact is, in the context of everything that occurred, DCFS, he had a guardian lawyer. He had girlfriends. He had counselors. And, again, if you look at it through the context of the child sexual abuse accommodation syndrome, everything is justified for why he didn't do something. So why DCFS? Why not the counselor? Why not the guardian? Why not this? So, again, a fact-driven analysis, that's not something that we can argue fact all day, and that's not law. But we argue that if you read this record and what he can relate and what Nathan does relate, whether it's hesitant or whether it's for whatever reason, there is question as to how he has testified. He doesn't remember his brother's own birth date. He was corroborated by medical evidence. I don't know that he was corroborated definitively. There was evidence, and, again, there was evidence of a notch healed in the frenulum, which is the skin between. But he plays football. He was a mouthpick. And the doctor himself said he couldn't be definitive on that, and there were the fissures. There were two small fissures that were healing. The doctor first says, by the way, two weeks. Couldn't make a diagnosis. The diagnosis said it was sexual assault. Right. And so it's not definitive of sexual, you know, and that's all I can say on that. But I can say that you read this case and there's something unsettling about the quality of the testimony. It was a one-day trial. All these witnesses testified in one day. It was a spare trial, because I've been doing this for 35 years. It was a spare trial I've read in a case involving these kinds of issues over this longer period of time. And so I was unsettled. I hope I transmit some of that to your honors in terms of how I've asked you to view it. So with respect to the syndrome, you're basically asking us to go back to pre-Nelson and say just because everyone has accepted it because other states accepted it, we never did a scientific analysis. We never stepped back and said, is there a scientific basis for accepting this syndrome? And that's what you're asking us to do as we revisit the issues. Not exactly. Okay, then. Okay. With all due respect, Justice Gertzen, I don't think you're required to do that. I think you're required to. Not required. I'm just saying it's not what you're asking us to do. Well, I'm saying that what I'm asking you to review whether or not, not the science of it, but whether or not scientists themselves, meaning the relevant community under FRI, scientists themselves accept this. Not whether State A and State B and State C accept it, but whether scientists, not the science of it, but whether or not it's generally accepted by those that are engaged, the relevant community. You're basically asking us to ignore that other cases have accepted it because it's been accepted elsewhere and step back and do a FRI analysis. Well, something like that, yes. I'm saying also to you that we know appellate courts are not the policy courts. There's only one policy court. That's the Supreme Court. But the Supreme Court hasn't set policy. And that leaves it to you. It's open to you. We could demand it back. You could. You could. You could. And I think that, you know, and the Supreme Court has made pronouncements on too much expert testimony. And I think this is exactly the example. I think that it's not bad science for a doctor to sit down and say, you know, I've interviewed these people and I see these characteristics. That's not bad science. But when other scientists are saying don't use it this way and other states are saying don't use it this way, and when you do have that snowball effect that I think happened after Nelson, I think it's fair for your honors to say, well, let's review this and let's really take a look at this and are we treating a citizen of this state justly? So unless there are any other questions, I thank you for your attention. May it please the Court. I'll also concentrate on issues one and three. As for the first issue, this issue's been waived because defendant did not object until the post-trial motion and the objections made in the post-trial motion are not the same as the ones he's making on appeal. On the merits, the child sexual abuse accommodation syndrome is recognized and accepted in Illinois as a form of post-traumatic stress syndrome. In Illinois, it's been accepted since 1990. Nelson, the Fifth District, and in this court since 2003, Hodor, it's been accepted. And I think my opponent is merely asking this court to revisit cases that have been he's making the same challenges that were made in all these cases that have already been heard. In Nelson, the defendant argued that the literature in the field of psychology does not recognize the child sexual abuse syndrome and he argued in that case in Nelson, they argued that the syndrome was not listed in the Diagnostic and Statistic Manual of Mental Health. The court said that that was one factor to consider in balancing the probative value versus the prejudice to defendant and noted that very few concepts are generally accepted by all behavioral scientists and that any challenges would go to the weight of the testimony, not its admissibility. In Watson, a Fourth District case, the defendant cited other jurisdictions which precluded admission of the child sexual abuse accommodation syndrome and that the fact that the syndrome was not listed in the DSM. In Pollard, a Third District case, the defendant also cited out-of-state cases. In Dempsey, a Fifth District case, the defendant was still arguing that there remains a great controversy in the field of psychology over the validity and reliability of the syndrome. The syndrome is past the test in all of these cases and I think the case law in Illinois is that it's a generally accepted syndrome. As for Issue 3, this issue has also been waived. The defendant did not object to the court's comments that he made at sentencing about the foreign object being placed in the victim's body and being fraught with additional peril to the health and well-being of an individual. It did not follow a post-sentencing motion including this issue. On the merits, a factor implicit in the offense should not be used in aggravation in sentencing. The rationale is that the legislature has already devised a certain range of punishment for the crime, which is based on the crime itself as well as the elements which comprise it. In Illinois, the type of sexual penetration is not an element of the offense of criminal sexual assault and neither is harm or potential harm. In this case, the judge determined, having seen the anal beads at trial, that penetration with the anal beads caused more harm or potential harm than intrusion with defendant's body parts. The trial court's conclusion was not nonsensical and this court should defer to the court's judgment, the lower court having seen the objects used. I think the use of the object in this case was the minimum required by the offense. The judge apparently viewed the object as more threatening or dangerous. Analogously, a judge might view a Bowie knife as more threatening or dangerous than a two-inch pocket knife or a shotgun as more threatening or dangerous than a target pistol. We'd ask the court to defer to the trial court on this issue. Are there any other questions? Thank you very much. Thank you. Counsel, do you wish to reply? Unless there are questions, I will not offer any further comment. Any further questions? Thank you very much. Thank you.